RECEIVED
NOV 0 9 2009
OFFICE OF THE BANKRUPTCY JUDGE
SYRACUSE, NY

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK (SYRACUSE DIVISION)

In re

NORTHEAST BIOFUELS, LP, et al.,

Debtor.

Case No. 09-30057-5-mcr
Chapter 11 (Main Case)
Case No. 09-30058-5-mcr
Case No. 09-30059-5-mcr

Jointly Administered

## STIPULATION AND ORDER OF SETTLEMENT AND AGREEMENT

**THIS STIPULATION AND ORDER OF SETTLEMENT AND AGREEMENT** (the "Stipulation and Order"), entered into this _10_ day of November 2009, by and among the Official Committee of Unsecured Creditors appointed in the above-captioned cases (the "Committee"), Northeast Biofuels, LP ("NEB" or the "Debtor"), NEB Holdings, LP ("NEB Holdings"), and NEB GP, Inc.("NEB GP") (NEB Holdings, together with NEB and NEB GP, the "Debtors"), the and Debtor's prepetition secured lenders, with Wilmington Trust FSB as Administrative Agent (the "Secured Lenders"). The Debtors, the Committee, and the Secured Lenders are hereinafter the "Settling Parties." Sunoco, Inc. (R&M) (the "Purchaser") is not a party to this Stipulation and Order, but consents and agrees to the provisions of Paragraph 7 hereof.

**WHEREAS:**

**A.** On January 14, 2009 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court").

**B.** On February 2, 2009, the Office of the United States Trustee appointed the Committee.

**C.** On March 9, 2009, the Debtor filed its Motion for an Order Authorizing (I) the Sale of Substantially All of the Assets of Debtor Northeast Biofuels, L.P. Free and Clear of Liens, Claims and Encumbrances and (II) the Assumption and Assignment of Executory Contracts and Unexpired Leases (the "Sale Motion")[1] seeking authority to sell substantially all of the assets of NEB.

**D.** On March 20, 2009 this Court entered an Order (the "Procedures Order") authorizing the Debtor to conduct, and approving the terms and conditions of, an auction to consider higher or otherwise better offers for the Debtor's assets (the "Auction").

**E.** On May 14, 2009, the Committee filed its Objection to the Sale Motion (the "Committee Objection") and the US Trustee filed its Objection to the Sale Motion (the "US Trustee Objection") on the basis that the sale contemplated by the Debtors provided no benefit to the Debtors' estates and that the bids received by the Debtors prior to the bid deadline set forth in the Procedures Order would be insufficient to pay the Secured Lenders in full on their approximately $169 million claim and produce a recovery for unsecured creditors.

**F.** On May 18 and 19, 2009, the Debtor conducted the Auction for the sale of its assets, including the Debtor's claims against Lurgi (the "Lurgi Litigation") and the Debtor's general operating assets (the "Business Assets"). At the conclusion of the Auction, Lurgi was the successful bidder for the Lurgi Litigation and the Purchaser was the successful bidder for the Business Assets. The proceeds from the sale of the Lurgi Litigation and the Business Assets are comprised of $8.8 million (the "Sale Proceeds") that was paid to the Debtor plus $3.8 million

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Sale Motion.

that was released to the Debtor out of an account that had been established with the United States District Court for the Northern District of New York pursuant to the District Court's decision dated April 12, 2009 (Case No. 5:09-cv-439) (the "Lurgi Escrow Proceeds").

**G.** On May 19, 2009, the Court held the Sale Hearing, and, among other things, approved the sale of the Lurgi Litigation to Lurgi and the Business Assets to the Purchaser. Separate orders approving the sales of the Business Assets and the Lurgi Litigation (the "Sale Orders") were entered by the Court on May 22, 2009 and June 9, 2009, respectively.

**H.** As a condition of the approval of the Sale Orders, the Court also approved at the Sale Hearing the agreement between the Debtors, the Secured Lenders, and the Committee to a carve-out for the benefit of unsecured creditors from the Net Distributable Proceeds (as defined below) to resolve the Committee Objection and the US Trustee Objection; and as part of that settlement the Settling Parties hereto have agreed to enter into this Stipulation and Order, as set forth more fully below.

**NOW, THEREFORE,** in consideration of the premises and of the representations hereinafter set forth, and intending to be legally bound hereby, the Settling Parties agree as follows:

1. **Distribution to Allowed Unsecured Claims.** The distributions to unsecured creditors set forth herein shall be used to pay a portion of the allowed general unsecured claims against the Debtor (the "Allowed Unsecured Claims"). Notwithstanding anything contained in this Stipulation and Order or in the Sale Orders, Allowed Unsecured Claims shall not include the deficiency claim held by the Secured Lenders or any claim of Lurgi against any of the Debtors.

2. **Percentage of Net Distributable Proceeds.** The Sale Proceeds and the Lurgi Escrow Proceeds along with the Debtors' additional cash whenever received, including but not

limited to, cash realized from the Debtors' business operations, the sale or disposition of any assets not sold to Lurgi and the Purchaser, the interest earned on invested funds or from any other source (collectively, the "Distributable Proceeds") constitute the Secured Lenders' cash collateral (the "Cash Collateral"). Pursuant to the Stipulation and Fifth Supplemental Order Authorizing Limited Use of Cash Collateral and Granting Adequate Protection, dated August 6, 2009, extending the Debtors' use of cash collateral through and including November 1, 2009 (the "Fifth Cash Collateral Order") and previous orders authorizing the use of Cash Collateral and the budgets attached thereto (collectively, the "Prior Budgets"), the Court has authorized the Debtors to use Cash Collateral through November 1, 2009. The parties expect to enter into at least one further stipulation and order for the use of Cash Collateral pursuant to budgets for the period after November 1, 2009 (together with the Prior Budgets, the "Cash Collateral Order Budgets") to fund the remainder of the Debtors' chapter 11 cases. The net cash available after all expenditures are made pursuant to the Budgets and after the payment of all Allowed Priority Claims under Sections 502(i) and 507(a) of the Bankruptcy Code, and Allowed Administrative Claims under Sections 503(b) and 507(a)(2) of the Bankruptcy Code shall be referred to as the "Net Distributable Proceeds". The Secured Lenders shall retain a lien on 96.3855% of the Net Distributable Proceeds and the remaining 3.6145% of the Net Distributable Proceeds shall be made available for distribution under a chapter 11 plan of reorganization for the Debtors (a "Plan") in respect of Allowed Unsecured Claims.

3. **Guaranteed Minimum Recovery.** The Settling Parties agree that, regardless of the amount of Net Distributable Proceeds available, a minimum amount of $400,000.00 of the Net Distributable Proceeds (the "Minimum Distribution") shall be reserved for distribution to holders of Allowed Unsecured Claims under a Plan. Upon the Stipulation and Order becoming a

Final Order, the Minimum Distribution shall be put into escrow by the Debtors, who shall remit such funds to the Disbursing Agent for the payment of Allowed General Unsecured Claims as provided under a Plan and this Stipulation and Order.

4. **Recovery Cap.** The Settling Parties further agree that the maximum amount available for distribution to holders of Allowed Unsecured Claims under a Plan shall be capped at $600,000.00 (the "Recovery Cap").

5. **Fixed Percentage.** For avoidance of doubt, subject to paragraphs 3 and 4 above, the percentage of Net Distributable Proceeds available for distribution to the holders of Allowed Unsecured Claims under a Plan shall be fixed at 3.6145% of Net Distributable Proceeds, regardless of the total amount of Allowed Unsecured Claims and any other claims asserted against the Debtors' estates.

6. **Claims Reconciliation Process.** The Committee and its counsel shall be and hereby are granted standing to conduct the claims review, objection and allowance process concerning all scheduled and filed general unsecured claims and to file objections to such claims as appropriate. In addition, except as limited by orders of this Court or in a confirmed Plan, the Committee and its counsel shall be and hereby are granted standing to investigate and commence any and all actions, causes of actions, debts, sums of money, damages, claims and demands whatsoever, whether known or unknown, in law including, without limitation, pursuant to 11 U.S.C. Sections 510, 544, 547, 548, 549, 550 and 553 or equivalent provisions of applicable non-bankruptcy law, equity or otherwise that the Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or that any holder of a Claim or Equity Interest would have been able to assert on behalf of the Debtors. The Debtors agree, in consultation with the Secured Lenders, to provide reasonable assistance to the Committee to

permit the Committee to investigate and, if deemed appropriate by the Committee, prosecute objections to certain general unsecured claims.

7. The Purchaser shall permit the Debtors to store their business records at the Debtor's facility after the closing of the sale to Purchaser and the Purchaser shall allow the Debtors and the Committee access to these records upon prior written notice to the Purchaser until January 31, 2010, provided that at any time after January 31, 2010, following two-weeks prior notice to counsel for the Committee, the Purchaser may dispose of such business records as it deems necessary.

8. **Administrative Costs.** In order to conclude the administration of the estates, including the wind-down process, the Debtors' chapter 11 cases must continue through and after the closing of the sales to the Purchaser and Lurgi. The Fifth Cash Collateral Order allocated certain amounts to pay professionals, including $184,700 for the fees and for expenses for counsel to the Committee. The Settling Parties, including the Secured Lenders, agree that at least one additional Cash Collateral Order Budget will be submitted to the Court to allow for the conclusion of the administration of the estates after November 1, 2009. Such budgets will provide for an additional aggregate amount of $34,000 for the fees and expenses of counsel to the Committee. The Committee and its counsel agree that they shall not be entitled to, and shall not seek, any further amounts beyond the $184,700 provided in the Fifth Cash Collateral Order and the additional $34,000 (together, the "Committee Budgeted Fees and Expenses"). The Secured Lenders agree that the Committee Budgeted Fees and Expenses shall be accorded to the Committee in order to allow for the conclusion of the administration of the estates. To the extent that the Committee's and its counsel's final fees and expenses aggregate less than the Committee Budgeted Fees and Expenses, any amounts remaining in the Cash Collateral Order Budgets for

Committee fees and expenses shall become Net Distributable Proceeds to be distributed as set forth in paragraphs 2 through 5, above.

9. **Plan**. The Committee agrees to support any reasonable Plan which incorporates the terms of this Stipulation.

10. **Representation and Warranty**. Counsel for each Settling Party signing this Stipulation and Order hereby represents and warrants that it is authorized to sign this Stipulation and Order on behalf of each Settling Party for whom it is signing.

11. **Amendments and Waivers**. Any provision of this Stipulation and Order may be amended or waived, if, but only if, such amendment or waiver is in writing and is signed, in the case of an amendment, by each party to this Stipulation and Order, or in the case of a waiver, by the party against whom the waiver is to be effective.

12. **Successors and Assigns**. The provisions of this Stipulation and Order shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, successors and assigns; *provided*, that no party may assign, delegate or otherwise transfer any of its rights or obligations under this Stipulation and Order without the consent of each other party hereto.

13. **Governing Law**. The Stipulation and Order shall be governed by and construed in accordance with the law of the State of New York, without regard to the conflicts of law rules of such state.

14. **Jurisdiction**. The parties hereto agree that any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Stipulation and Order or the transactions contemplated hereby shall be brought before the United States Bankruptcy Court for the Northern District of New York, so long as such court shall have

subject matter jurisdiction over such suit, action or proceeding, and that any cause of action arising out of this Stipulation and Order shall be deemed to have arisen from a transaction of business in the State of New York, and each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts there from) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

15. **Counterparts; Third Party Beneficiaries.** This Stipulation and Order may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. Unless otherwise specified herein, no provision of this Stipulation and Order is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other then the parties hereto and their respective successors and assigns.

16. **Entire Agreement.** This Stipulation and Order constitutes the entire agreement between the parties with respect to the subject matter of this Stipulation and Order and supersedes all prior agreements and understandings, both oral and written, between the parties with respect to the subject matter of this Stipulation and Order.

17. **Severability.** If any term, provision, covenant or restriction of this Stipulation and Order is held by a court of competent jurisdiction or other governmental authority to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Stipulation and Order shall remain in full force and effect and shall in no way be affected, impaired or invalidated so long as the economic or legal substance of the transactions

contemplated hereby is not affected in any manner materially adverse to any party. Upon such a determination, the parties shall negotiate in good faith to modify this Stipulation and Order so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the fullest extent possible.

18. **Bankruptcy Court Approval and Effectiveness of Stipulation and Order.** The agreement set forth herein is subject to the approval of the Bankruptcy Court and shall become effective upon the entry of this Stipulation and Order by the Bankruptcy Court.

Dated: November 5, 2009

NORTHEAST BIOFUELS, LP,
NEB HOLDINGS, LP, AND NEB GP, INC. as
Debtors and Debtors in Possession

By: /s/ Jeffrey A. Dove

Jeffrey A. Dove, Esq., of counsel
James C. Thoman, Esq., of counsel
MENTER, RUDIN & TRIVELPIECE, P.C.
308 Maltbie Street, Suite 200
Syracuse, NY 13204-1498
Tel: (315) 474-7541

Marc E. Richards, Esq., of counsel
BLANK ROME LLP
405 Lexington Avenue
New York, NY 10174-0208
Tel: (212) 885-5231

Dated: November 5, 2009        THE OFFICIAL COMMITTEE OF UNSECURED
                                CREDITORS

                          By: _____/s/_____
                                Stephen A. Donato, Esq., of counsel
                                Sara C. Temes, Esq., of counsel
                                BOND, SCHOENECK & KING, PLLC
                                Office and Post Office Address:
                                One Lincoln Center
                                Syracuse, New York  13202
                                Tel: (315) 218-8000


Dated: November ___, 2009       WILMINGTON TRUST FSB, as Administrative
                                Agent for the Debtors' prepetition secured lenders



                          By: _____
                                J. Eric Charlton, Esq., of counsel
                                HISCOCK & BARCLAY, LLP
                                One Park Place
                                300 South State Street
                                Syracuse, New York 13202
                                Tel:: (315) 425-2700

                                Ronald Cohen, Esq., of counsel
                                Laurie Binder, Esq., of counsel
                                SEWARD & KISSEL LLP
                                One Battery Park Plaza
                                New York, NY 10004
                                Tel: (212) 574-1515

Dated: November ___, 2009        THE OFFICIAL COMMITTEE OF UNSECURED
                                 CREDITORS

                         By:     _____
                                 Stephen A. Donato, Esq., of counsel
                                 Sara C. Temes, Esq., of counsel
                                 BOND, SCHOENECK & KING, PLLC
                                 Office and Post Office Address:
                                 One Lincoln Center
                                 Syracuse, New York 13202
                                 Tel: (315) 218-8000


Dated: November 5, 2009          WILMINGTON TRUST FSB, as Administrative
                                 Agent for the Debtors' prepetition secured lenders

                         By:     _____
                                 J. Eric Charlton, Esq., of counsel
                                 HISCOCK & BARCLAY, LLP
                                 One Park Place
                                 300 South State Street
                                 Syracuse, New York 13202
                                 Tel:: (315) 425-2700

                                 Ronald Cohen, Esq., of counsel
                                 Laurie Binder, Esq., of counsel
                                 SEWARD & KISSEL LLP
                                 One Battery Park Plaza
                                 New York, NY 10004
                                 Tel: (212) 574-1515

ACKNOWLEDGED WITH RESPECT TO PARAGRAPH 7 ONLY:

Dated: November 5, 2009      SUNOCO, INC. (R&M)

By: _____
Lawrence J. Kotler, Esq., of counsel
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196
Tel: (215) 979-1514


SO ORDERED:

Date: November 10, 2009
       Syracuse, New York

_____
Hon. Margaret Cangilos-Ruiz
United States Bankruptcy Judge